(No. 93-CV-2303—

*In re* APPLICATION OF MARCELLO SNOW

*Order filed December 15, 1995.*
*Opinion on rehearing filed April 23, 1999.*

MARCELLO SNOW, *pro se.*

JIM RYAN, Attorney General (PAUL H. CHO and DONALD C. MCLAUGHLIN, JR., Assistant Attorneys General, of counsel), for Respondent.

## ORDER

PER CURIAM.

This claim arises out of an incident that occurred on November 9, 1992. The Claimant, Marcello Snow, seeks compensation pursuant to the provisions of the Crime Victims Compensation Act, hereafter referred to as the Act. 740 ILCS 45/1 *et seq*.

This Court has carefully considered the application for benefits submitted on March 5, 1993, on the form prescribed by the Attorney General, and an investigatory report of the Attorney General which substantiates matters set forth in the application. Based upon these documents and other evidence submitted to the Court, the Court finds:

1. That on November 9, 1992, the Claimant, Marcello Snow, age 20, was a victim of a violent crime as defined in section 72(c) of the Act, to wit: aggravated battery. See section 12—4 of the Criminal Code, 720 ILCS 5/12—4.

2. That the crime occurred in Chicago, Illinois, and all of the eligibility requirements of section 6.1 of the Act have been met.

3. That the Claimant seeks compensation for medical/hospital expenses.

4. That the Claimant has incurred medical/hospital expenses in the amount of $22,477.98. To date, the Claimant has paid nothing towards this amount.

5. That section 10.1(g) of the Act states that compensation under this Act is a secondary source of compensation and the applicant must show that he has exhausted the benefits reasonably available under the Criminal Victim's Escrow Account Act or any governmental or medical or health insurance programs, including, but not limited to Worker's Compensation, the Federal Medicare program, the State Public Aid program, Social Security Administration burial benefits, Veterans Administration burial benefits, and life, health, accident or liability insurance.

6. That the Claimant filed an application for medical assistance with the Illinois Department of Public Aid in November, 1992. This application was denied due to the Claimant's noncooperation with the Illinois Department of Public Aid. Therefore, his eligibility for assistance could not be determined and the application was denied.

7. That the Claimant failed to exhaust the remedies reasonably available to him by not utilizing public aid to assist in paying his outstanding medical/hospital expenses. Therefore, pursuant to section 10.1(g) of the Act, the Claimant is not eligible for compensation for medical/hospital expenses.

8. That the Claimant has not met a required condition precedent for compensation under the Act.

It is hereby ordered that this claim be, and is hereby, denied.

## OPINION ON REHEARING

EPSTEIN, J.

This claim for compensation under the Crime Victims Compensation Act (740 ILCS 45/1 *et seq.*) (the

"Act") is back before us on rehearing following a hearing before our Commissioner Blakemore on January 24, 1997, which was held pursuant to Mr. Snow's request for rehearing of this Court's denial of his application (order of December 15, 1995).

This $22,477.98 claim for payment of medical and hospital expenses under the Act arises out of an aggravated battery upon the Claimant that occurred on or about November 9, 1992, when the Claimant was shot. In our initial order, this Court found that Claimant Snow met all of the conditions for compensation under the Act for the 1992 aggravated battery upon him, save one. We denied compensation due to Claimant's failure to comply with the mandatory requirements of section 10.1(g) of the Act (740 ILCS 45/10.1(g)) which requires applicants to exhaust, and to prove that they have exhausted, alternatively available benefits for the claimed losses, including public aid:

"(g) compensation under this Act is a secondary source of compensation and the applicant must show that he has exhausted the benefits reasonably available under * * * any governmental or medical or health insurance programs, including, but not limited to * * * the State public aid program * * *."

The Court denied Mr. Snow's compensation claim for failure to exhaust his public aid benefits (medical and hospital payments) due to his "noncooperation" with the Department of Public Aid, which amounted to his failure to complete the requisite public aid procedures and to provide adequate information to permit the Department to determine his eligibility. This failure resulted in an automatic denial, which was not appealed. This exhaustion issue is the sole question presented on rehearing.

At the evidentiary hearing, the Claimant's mother was the principal witness. Although her testimony fails to show that either she or her son followed through on his public aid application in any manner that might suffice, the picture that emerges is troubling, if familiar.

It appears that Mr. Snow was a college student attending an out of town institution, and did not himself actively seek to pursue his public aid application, which had been filled out and filed by his mother while he was being treated at the hospital. When his mother was ultimately informed that the application was denied and that its denial was preventing recovery under the Crime Victims Compensation Act—which she claims, credibly, that she first discovered from this Court's 1995 order, some three years after the application—Claimant's mother went to at least two public aid offices in a futile effort to reopen her son's file, but was met with bureaucratic indifference and inability to locate the then-stale application.

That failed effort, of course, is far too little and far too late, to satisfy the exhaustion and proof-of-exhaustion requirements of the Act—even disregarding the fact that Mr. Snow apparently made no effort, and simply left the problem to his mother. However, we find it disturbing that the *only* notice that appears to have been given (on this record) by the Department of Public Aid that Mr. Snow's application had been denied was addressed, not to the Claimant or his mother, but to the hospital. If no notice was given to the applicant or to his mother, it is not clear whether or not the public aid file was properly closed.

On this record, however, we cannot find that this Claimant has satisfied the exhaustion requirement of section 10.1(g) of the Act with respect to his potential public aid benefits.

This is not a novel problem in the administration of the Crime Victims Compensation Act, and under the legislative directive of section 10.1(g), this Court has very limited discretion once the issue has been raised. As this Court held in *In re Application of David G. Merta* (1988), 41 Ill. Ct. Cl. 328, 334:

"\* \* \* once the Office of the Attorney General raises the issue [of failure to exhaust reasonably available benefits under section 10.1(g)], the Claimant must show that he exhausted the suggested benefits or that the suggested benefits were not reasonably available to him. What is reasonably available necessarily must be judged on a case-by-case basis."

The *Merta* opinion cites *In re Application of Nagy* (1975), 30 Ill. Ct. Cl. 888; *In re Application of Dickey* (1981), 35 Ill. Ct. Cl. 517; *In re Application of Hamilton* (1983), 35 Ill. Ct. Cl. 1023; *In re Application of Wells* (1984), 37 Ill. Ct. Cl. 510; *In re Application of Gordon* (1986), 38 Ill. Ct. Cl. 464; and *In re Application of Hickey* (1987), 40 Ill. Ct. Cl. 392; as precedents of this Court's enforcement of the section 10.1(g) exhaustion requirement.

There are only two alternatives to the exhaustion requirement for a Claimant, under the statutory provision: (1) show that the benefits were not, in fact or in law, reasonably available to the Claimant, and (2) show that the benefits, if received, would not have fully satisfied the compensable losses under the Act. In this case, the Claimant has had an opportunity and a full rehearing to attempt to show that he was, in fact, ineligible for public aid benefits, and he has failed to make any such showing (or even an attempt to do so). In this circumstance and in this six-year-old claim, we will not allow a third bite at the apple on that issue.

However, neither the State nor the Claimant has addressed the financial point of the section 10.1(g) exhaustion issue in this case: if the Claimant had exhausted his public aid procedures and had obtained payment from public aid, would the public aid benefit have fully paid the Claimant's $22,477.98 medical and hospital bills? If the answer is that public aid would not have paid the full amount, then the failure to exhaust that benefit does not fully bar Mr. Snow's claim. Whatever amount, if any, would remain to be paid after public aid paid its share would remain a legitimate claim under the Act.

However, at this late date, we will not order yet another hearing to ascertain such facts, which could have been presented well before this point. In the interests of fairness, and in light of the procedural precedents of the *Hickey* and *Merta* cases, we will permit the Claimant one final chance, by written submission, to show if he can, that his public aid benefits in 1993 would not have fully paid the $22,477.98 medical and hospital claims in this case.

We will allow Claimant 90 days in which to submit such documentation, and we request the Attorney General's office to cooperate in ascertaining the relevant limits of public aid benefits available to this Claimant (assuming his eligibility). If the Claimant timely files a submission, the Respondent may respond in writing within 14 days thereafter. If no submission is timely filed by the Claimant, this case will remain closed.

For these reasons, it is now ordered:

1. The order of December 15, 1995 denying this claim for failure to comply with the exhaustion requirements of section 10.1(g) of the Act is reaffirmed;

2. This case is closed, subject only to paragraph 3 of this order;

3. Claimant is granted 90 days from the date of this order to file documentation of the amount of his medical and hospital bills that would have been paid by public aid in 1993, if the Claimant had been found eligible and had obtained public aid benefits for his hospital and medical expenses arising out of the incident of November, 1992; upon such timely submission, this case will be reopened.

4. Respondent shall have 14 days to respond in writing to Claimant's submission;

5. If no submission is made by Claimant within 90 days after the date of this order, this case shall remain closed with prejudice.